**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

JUSTIN MAXNER,
    **Plaintiff,**

v.                        **CASE NO.:  2:25-CV-476-JLB-NPM**

AMERICAN CONTRACT SYSTEMS,
INC.
    **Defendants.**

_____

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN
OPPOSITION AMERICAN CONTRACT SYSTEMS, INC.'s
MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, JUSTIN MAXNER, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant American Contract Systems, Inc.'s ("ACS") Motion to Dismiss Count III of Plaintiff's Amended Complaint (Doc 48), and states as follows:

**INTRODUCTION**

Defendant American Contract Systems, Inc. ("ACS") asks this Court to narrow Fla. Stat. § 376.313, resolve disputed factual questions, and impose evidentiary burdens that have no place at the pleading stage. But the Amended Complaint does not rest on speculation. It alleges that ACS emitted ethylene oxide ("EtO"), a CERCLA listed hazardous substance, from its Fort Myers sterilization facility over an extended period; that those emissions entered the surrounding environment, including the area where Plaintiff worked; and that Plaintiff suffered resulting injuries.

At this stage, the Court's task is straightforward: determine whether the allegations, taken as true and construed in Plaintiff's favor, plausibly state a claim for relief. They do.  Count III alleges a qualifying discharge or other condition of pollution involving a hazardous substance under Fla. Stat. § 376.313(3) and resulting damages; nothing more is required at the pleading stage.

Fla. Stat. § 376.313 provides a strict liability remedy for all damages resulting from a discharge or other condition of pollution involving hazardous substances. It does not require a plaintiff to plead expert proof, quantify emissions, or litigate statutory scope disputes on the face of the complaint. Nor does Florida law permit courts to narrow the statute through technical limitations not found in its text.

Because the Amended Complaint plausibly alleges a statutory violation and resulting harm, and because ACS's arguments depend on rewriting the statute and resolving merits issues reserved for later stages, the motion to dismiss should be denied.

## ARGUMENT

### I.    Plaintiff Has Stated a Claim Under Fla. Stat. § 376.313 (Count III)

ACS's Count III motion rests on an artificially cramped view of the Fla. Stat. § 376.313, one that would deny strict liability remedies unless a complaint uses the defendant's preferred words such as, ground and surface waters, even where a hazardous substance is alleged to be discharged into the surrounding environment and to have caused personal injury. That is not what § 376.313(3) says, and it is not how Rule 8 operates.

2

ACS argues that Count III fails to state a claim under Fla. Stat. § 376.313 because the Complaint does not allege contamination of Florida's land or water resources. (Doc. 48 Page ID 528). This argument misinterprets the statute and ignores the Complaint's allegations, which establish a viable claim for statutory strict liability.

At bottom, ACS seeks to litigate the scope of environmental impact and causation at the pleading stage, questions reserved for discovery and later dispositive motions.

## II. Argument: The Florida Water Quality Assurance Act Applies to EtO Emissions

### A. Cunningham v. Anchor Hocking Corp. Is Binding Florida Appellate Authority

Florida law squarely forecloses ACS's central premise that airborne or gaseous hazardous substances fall outside § 376.313. In *Cunningham v. Anchor Hocking Corp.*, the First District held that Fla. Stat. § 376.313 applies to gaseous and vaporous pollutants, expressly rejecting the argument that the statute is limited to liquid or solid contamination or to traditional land or water-based spills. *Cunningham v. Anchor Hocking Corp.*, 558 So. 2d 93, 99 (Fla. 1st DCA 1990).

There, as here, the case involved airborne hazardous substances affecting persons near a facility in a populated area. The First DCA held that such gaseous and vaporous emissions fall within §376.313's scope. *Cunningham,* 558 So. 2d at 99. ACS offers no meaningful distinction from *Cunningham*, both cases involve airborne hazardous substances released from industrial facilities in areas where people live and work.

3

If *Cunningham*'s vaporous emissions qualified as actionable under § 376.313, then EtO emissions necessarily qualify here. ACS's motion would require this Court to disregard Florida appellate authority without explanation or justification. Because *Cunningham* recognizes that airborne emissions may constitute a qualifying discharge or condition of pollution under § 376.313, it forecloses ACS's position as a matter of Florida law.

Federal courts applying § 376.313 have reached the same conclusion. *See Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1312 (S.D. Fla. 2020) (extending § 376.313 to airborne emissions). The convergence of state and federal authority on this point confirms that ACS's proposed limitation finds no support in the law.

### B. The Statutory Text Confirms the Breadth of § 376.313 and Supports Cunningham's Holding

Fla. Stat. § 376.313(3) creates a broad, strict-liability cause of action allowing recovery for "all damages resulting from a discharge **or other condition of pollution covered by ss. 376.30-376.317**." (emphasis added). The statute expressly provides that a plaintiff need not plead or prove negligence and need only allege the fact of the prohibited discharge or other pollutive condition and resulting damages. Its text, and structure foreclose ACS's attempt to narrow the statute to land or water-only contamination.

The Florida Supreme Court has emphasized that § 376.313 must be liberally construed to effectuate its purpose. *Curd v. Mosaic Fertilizer*, LLC, 39 So. 3d 1216, 1221-22 (Fla. 2010). The Supreme Court reaffirmed this in *Lieupo v. Simon's Trucking, Inc.*,

4

286 So. 3d 143, 146 (Fla. 2019): that Fla. Stat. § 376.313 must be applied liberally as directed by the Legislature. Consistent with that directive, courts may not narrow the statute through technical pleading requirements or limitations not found in the statutory text.

This interpretation aligns with federal environmental law under CERCLA. By incorporating CERCLA via Fla. Stat. § 376.301(20), the Florida Legislature intended similar breadth, ensuring protection from industrial pollutants like EtO. Narrowing the Act as ACS proposes would undermine public policy, leaving workers and residents near facilities, such as Plaintiff in this densely populated Fort Myers area (Doc. 47 ¶¶ 1, 3), without recourse for airborne hazards that inevitably affect broader environmental resources.

## C. The Statute Expressly Creates Liability for Hazardous Substances and Other Conditions of Pollution

ACS's statutory argument fails because it ignores both the Legislature's express incorporation of CERCLA hazardous substances and the multiple, independent bases for liability set forth in § 376.313.

### 1. EtO Is a Hazardous Substance Expressly Covered by Chapter 376

Ethylene oxide is indisputably a "hazardous substance" under Florida law. The Florida Water Quality Assurance Act incorporates CERCLA's definition of "hazardous substance" through Fla. Stat. § 376.301(20), which falls squarely within the statutory range (§§ 376.30–376.317) incorporated by Fla. Stat. § 376.313(3). EtO is expressly listed as a CERCLA hazardous substance, and ACS does not dispute that

5

classification (Doc 48). By incorporating CERCLA, the Legislature made a deliberate choice to subject releases of such substances, including EtO, to the Act's strict liability framework.

That choice is confirmed by § 376.313 itself. The statute recognizes joint and several liability for prohibited discharges of "pollutants or **hazardous substances** or other pollution conditions." Fla. Stat. § 376.313(3) (emphasis added). By listing "hazardous substances" as a distinct category, separate from both "pollutants" and "other pollution conditions," the Legislature made clear that releases of hazardous substances independently trigger liability under Chapter 376, regardless of the environmental medium involved.

### 2. The "Other Condition of Pollution" Language Confirms the Statute's Breadth

ACS's argument also relies on selective quotation. ACS isolates the word "pollution," and sometimes its definition in Fla. Stat. § 376.301(37), while ignoring the liability-creating clause authorizing recovery for "a discharge or other condition of pollution covered by ss. 376.30–376.317." Fla. Stat. § 376.313(3). That phrase defines the scope of recovery.

The Legislature did not limit remedies to "pollution" narrowly defined. Instead, it authorized claims for any discharge or other condition of pollution falling within the incorporated statutory range. Because § 376.301(20) is included within that range and incorporates CERCLA hazardous substances, releases of EtO qualify as an "other condition of pollution" under the Act's broad remedial framework.

ACS's reading would require the Court to judicially remove both "hazardous substances" and "other condition of" from the statute. Courts do not interpret statutes in a manner that renders deliberate language meaningless or superfluous. *State v. Knighton*, 235 So. 3d 312, 316 (Fla. 2018).

**D. Defendant's Reliance on the Definition of "Pollution" Is Misplaced**

Defendant repeatedly invokes the definition of "pollution" in § 376.301(37), which refers to the presence of pollutants "on the land or in the waters of the state." That definition does not rescue Defendant's argument for several independent reasons.

First, § 376.313 does not impose liability solely for "pollution"; it imposes liability for a "discharge or other condition of pollution".

Second, the statute expressly incorporates hazardous substances via § 376.301(20), which is not limited to land or water, and includes EtO.

Third, Defendant's reading would nullify the Legislature's deliberate decision to incorporate CERCLA substances, many of which are gases, into Chapter 376. Statutes must be read as a whole. Defendant's construction would create an internal contradiction, defining hazardous substances broadly while rendering most of them legally irrelevant. Courts do not adopt interpretations that produce such absurd results.

**E.  The Complaint Adequately Alleges a "Discharge" or "Other Condition of Pollution"**

ACS argues that § 376.301(8)'s definition of "discharge" requires emissions "into or upon" land or waters, and that Plaintiff's allegations fail this test. This argument fails on multiple levels.

7

First, even assuming *arguendo* that airborne EtO emissions don't constitute a "discharge" in the narrow technical sense ACS proposes, they indisputably constitute an "other condition of pollution" under the Act's CERCLA incorporation and broad remedial purpose. ACS's attempt to collapse these distinct statutory pathways contradicts the text and renders "other condition of pollution" meaningless surplusage. *Knighton*, 235 So. 3d at 316.

Second, *Cunningham* expressly rejected the argument that § 376.313 requires discharges in liquid or solid form or that emissions must directly contact land or water surfaces to qualify. *Cunningham*, 558 So. 2d at 99. The First DCA held that gaseous and vaporous releases constitute actionable discharges under the statute. *Id.* ACS offers no basis to depart from this binding precedent.

The Amended Complaint plausibly alleges that ACS emitted ethylene oxide, a hazardous substance, into the surrounding environment in a manner sufficient to constitute a qualifying discharge or other condition of pollution under § 376.313(3), which is all that is required at the pleading stage.

**F. ACS Impermissibly Seeks to Impose Heightened Pleading Requirements**

ACS demands that Plaintiff plead specific environmental pathways, quantified deposition rates, and expert-level proof of land/water contamination. But Florida follows notice pleading, requiring only "a short and plain statement of the claim." Fla. R. Civ. P. 1.110(b). Federal courts apply the same standard under *Twombly* and *Iqbal*. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678. The Amended Complaint exceeds this threshold by alleging:

8

(1) emission of a specific hazardous substance (EtO, a CERCLA-listed substance);
(2) from a specific facility (11600 Adelmo Ln., Fort Myers);
(3) over a specific time period (2014 to present);
(4) affecting Plaintiff at his nearby workplace (6241 Arc Way, directly adjacent);
(5) with specific resulting injuries, including aggravation of Charcot-Marie-Tooth disease (Doc. 47 ¶¶ 84-91).

These detailed, factual allegations make Plaintiff's claim plausible, which is all Rule 8 and *Iqbal* require. A complaint has facial plausibility when it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

ACS's demand for scientific proof of deposition mechanisms, air modeling, and quantified contamination levels confuses pleading with proof. Such evidence is developed through discovery, not alleged in a complaint. ACS's approach would impermissibly heighten the pleading standard beyond *Twombly* and *Iqbal*, requiring plaintiffs to prove their cases before discovery even begins. Florida and federal courts alike reject such attempts to import summary judgment standards into Rule 12(b)(6) analysis.

Moreover, ACS's position would create an impossible Catch-22: plaintiffs could never obtain the discovery needed to quantify environmental impacts without first pleading those impacts with scientific precision. This inverts the litigation process and contradicts the liberal notice pleading regime governing both Florida and federal courts.

### G. Distinguishing Defendant's Cited Authorities

ACS's reliance on *Jerue v. Drummond Co.,* No. 8:17-CV-587-T-17AEP, 2017 WL 10876737, 2017 U.S. Dist. LEXIS 223245 (M.D. Fla. Aug. 17, 2017), *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So. 2d 20 (Fla. 2004), and *Irizarry v. Orlando Utilities Commission*, No. 6:19-cv-268-Orl-37EJK, 2020 WL 5534424, 2020 U.S. Dist. LEXIS 171762 (M.D. Fla. June 23, 2020), does not support dismissal. None of these cases holds that Fla. Stat. § 376.313 excludes airborne emissions of CERCLA-listed hazardous substances or imposes a heightened pleading requirement regarding impacts on land or waters.

ACS's reliance on *Irizarry* is particularly misplaced. *Irizarry* involved airborne coal ash blowing from uncovered piles into surrounding neighborhoods, and the court denied a motion to dismiss a strict-liability claim under Fla. Stat. § 376.313 based on those allegations. *Irizarry* 2020 U.S. Dist. LEXIS 171762, at *3. Emphasizing the statute's liberal construction and remedial purpose, the court rejected narrow readings of Fla. Stat.§ 376.313 and allowed the claim to proceed without requiring proof of specific land or water impacts at the pleading stage. *Id.* at *10-13. Far from supporting ACS's position, *Irizarry* confirms that airborne releases support a Fla. Stat. § 376.313 claim.

*Jerue* is likewise inapposite. That case involved direct land and water contamination arising from mining operations, including subsurface leaks and surface water impacts from waste impoundments. *See Jerue,* 2017 U.S. Dist. LEXIS 223245,

at *3-5. The court did not consider whether § 376.313 applies to airborne emissions, much less exclude them, and *Jerue* therefore offers no support for ACS's attempt to narrow the statute here.

*Aramark* similarly does not advance ACS's argument. There, the Florida Supreme Court addressed groundwater contamination from chemical solvents and emphasized the Florida Water Quality Assurance Act's strict-liability framework and remedial purpose. *Aramark*, 894 So. 2d at 22-27. The Court expressly rejected technical limitations on § 376.313 and made clear that the absence of a causation requirement was a deliberate legislative choice that cannot be viewed as legislative oversight. *Id.* at 24-25. *Aramark* did not involve airborne emissions and did not purport to limit the statute's application to any particular environmental medium.

In short, none of ACS's cited authorities addressed, much less rejected, claims based on persistent airborne releases of CERCLA-listed hazardous substances. To the extent those cases can be read to require some nexus to land or waters, the Amended Complaint's allegations readily satisfy that standard at the pleading stage. ACS's authorities therefore provide no basis for dismissal.

### H. The "Land and Waters" Policy Statement Does Not Override the Unambiguous Liability Provision

Finally, ACS leans heavily on § 376.30(1)'s general statement that the Act aims to protect Florida's "lands and waters." That provision describes legislative purpose, not the scope of the private cause of action.

11

Fla. Stat. § 376.313 is broader by design and does not incorporate only Fla. Stat. § 376.30 as ACS desires. Section 376.313 incorporates §§ 376.30 through 376.317. Section 376.313 allows recovery for "all damages" resulting from qualifying discharges or conditions of pollution and expressly dispenses with negligence requirements.

ACS's attempt to use a general policy statement from one statute to override an unambiguous liability provision violates basic rules of statutory interpretation. Prefatory language describing legislative purpose cannot expand or restrict the otherwise unambiguous operative language of a statute. *Dep't of State v. Fla. Greyhound Ass'n*, 253 So. 3d 513, 521 (Fla. 2018); *Dorsey v. State*, 402 So. 2d 1178, 1180 (Fla. 1981).

The liability provision in § 376.313(3) is clear and unambiguous: it creates a cause of action for "all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.317." The Legislature knew how to limit statutory scope when it wished to do so, it did not do so here. ACS asks this Court to judicially insert limitations that the Legislature omitted, a role courts consistently decline. *Knighton*, 235 So. 3d at 316.

Moreover, ACS's reliance on the "land and waters" language proves too much. If this prefatory statement limited all liability under Chapter 376, then the Legislature's incorporation of CERCLA substances, many of which are airborne, would be rendered meaningless. The Court must harmonize all statutory provisions, not permit one general policy statement to override specific operative language. *See Hechtman v.*

12

*Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003) (statutes must be construed as a whole to give effect to all provisions).

## I. ACS's Reliance on Lieupo and Schiffbauer Does Not Alter These Conclusions

ACS's reliance on *Lieupo v. Simon's Trucking, Inc.*, 286 So. 3d 143 (Fla. 2019), and *Schiffbauer v. Wal-Mart Stores, Inc.*, 669 F. Supp. 3d 1246 (S.D. Fla. 2023), does not alter this conclusion.

*Lieupo* addressed the scope of recoverable damages under a different statutory provision, specifically whether a plaintiff can recover damages for personal injury. *Lieupo*, 286 So. 3d at 146-48. The case did not address the threshold question of what constitutes a qualifying "discharge or other condition of pollution," and it certainly did not limit § 376.313 to land or water contamination. To the contrary, *Lieupo* reaffirmed that § 376.313 must be applied liberally as directed by the Legislature. *Id.* at 146. This directive supports, rather than undermines, Plaintiff's position.

*Schiffbauer* involved a plaintiff's handling of car batteries in a retail store and alleged lead exposure from direct physical contact with battery terminals. *Schiffbauer*, 669 F. Supp. 3d at 1249-51. The court found no environmental discharge or release into the surrounding community, just ordinary consumer product use. *Id.* at 1254-55. *Schiffbauer* is inapposite. Unlike a consumer touching a car battery in a store, this case involves industrial emissions of a CERCLA-listed hazardous substance from a sterilization facility into the surrounding community and atmosphere over many years. The *Schiffbauer* court did not address, and had no occasion to address, § 376.313

13

claims arising from hazardous airborne emissions affecting workers and residents near an industrial facility.

Neither *Lieupo* nor *Schiffbauer* undermines *Cunningham*'s binding holding that gaseous and vaporous pollutants fall within § 376.313's scope. Both cases are factually and legally distinct from the persistent airborne EtO emissions alleged here.

## J.  Application to the Amended Complaint

The Amended Complaint alleges that ACS emitted EtO, a CERCLA-listed hazardous substance (40 C.F.R. § 302.4), from its sterilization facility over an extended period; that those emissions entered the surrounding environment where Plaintiff worked; and that Plaintiff suffered resulting injuries. (Doc. 47 ¶¶ 84-91).

At the pleading stage, these detailed allegations are sufficient to state a claim under § 376.313(3). *Iqbal*, 556 U.S. at 678. Whether, and to what extent, ACS's emissions ultimately affected particular environmental media are factual questions reserved for discovery, not grounds for dismissal under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny ACS's Motion to Dismiss Count III. The Amended Complaint plausibly alleges that ACS emitted ethylene oxide, a CERCLA-listed hazardous substance, into the surrounding environment, that Plaintiff was exposed at his workplace, and that he suffered resulting injury.  The plain language of Fla. Stat. § 376.313(3) authorizes recovery for all damages resulting from a prohibited discharge of hazardous substances or other condition of pollution covered by §§ 376.30–376.317.  Florida courts have

14

directed that this remedial statute be applied liberally, not constrained by limitations absent from the text. Denying the motion follows the Legislature's intent, preserves access to justice for environmental harms, and allows factual development through discovery.

ACS asks this Court to do what the Florida Legislature declined to do: exempt airborne hazardous substances from strict liability. The statute's text, the Supreme Court's directive for liberal construction (*Curd*, *Lieupo*), and binding appellate precedent (*Cunningham*) all foreclose that result. Because ACS's arguments depend on rewriting the statute, disregarding controlling precedent, and resolving merits issues inappropriate at the pleading stage, the motion should be denied.

Respectfully submitted,

*/s/ Michael Lewis Beckman*

_____

**Michael Lewis Beckman**
**FBN: 0128279**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of January, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that a copy was served electronically via the CM/ECF system to Michael J. Thomas, Esq., PENNINGTON LAW, Attorney for Defendant, American Contract Systems, Inc., at

mike@penningtonlaw.com,
rjohnston@hollingsworthllp.com,
wcople@hollingsworthllp.com,
areissaus@hollingsworthllp.com, and

15

arybicki@hollingsworthllp.com.

**VILES & BECKMAN, L.L.C.**
6350 Presidential Court, Suite A
Fort Myers, Florida  33919
Telephone:  (239) 334-3933
Facsimile:   (239) 334-7105
Primary Email: michael@vilesandbeckman.com
Secondary Email: laci@vilesandbeckman.com
pleadings@vilesandbeckman.com

*/s/ Michael Lewis Beckman*

_____

**Michael Lewis Beckman**
**FBN: 0128279**
