UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUSTIN MAXNER,

      Plaintiff,

    v.

                           Case No. 2:25-cv-476-KCD-NPM

AMERICAN CONTRACT
SYSTEMS, INC.,

      Defendant.

_____/

## ORDER

Before the Court is Defendant American Contract Systems, Inc.'s ("ACS") motion to dismiss. (Doc. 48.)[1] Plaintiff Justin Maxner has responded in opposition (Doc. 49), making this matter ripe. For the reasons below, ACS's motion is granted.

## I. Background[2]

This is a tort case. Maxner claims he inhaled a hazardous chemical compound, ethylene oxide ("EtO"), emitted from an ACS facility that sterilized medical supplies. (Doc. 47 ¶¶ 16, 28.) The process involved injecting EtO into plastic bags, which according to the complaint, would leak. (*Id.* ¶ 20.) Although

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

pollution controls were introduced in 2023, EtO reportedly escaped through the facility's vents and into the air for years prior. (*Id.*)

Once released into the air, EtO can linger for months. (*Id.* ¶ 14.) Inhaling it can lead to DNA mutations, nausea, vomiting, cancer, neurological issues, bronchitis, pulmonary edema, and emphysema. (*Id.* ¶¶ 9, 13.) Because EtO is colorless and odorless, Maxner was unaware that the air around him at his neighboring workplace was contaminated for as long as nine years. (*Id.* ¶¶ 4, 11, 16, 23.)

Maxner now sues ACS for negligence (Count I), strict liability under the common law (Count II), and strict liability under Fla. Stat. § 376.313 (Count III). ACS seeks to dismiss Count III because, in its view, the underlying statute protects Florida's land and water, not its air.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most

favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

As mentioned, Count III asserts strict liability under Fla. Stat. § 376.313. That statute is part of Florida's Water Quality Assurance Act of 1983. It allows any person to sue for damages "resulting from a discharge or other condition of pollution covered by [sections] 376.30– 376.319." Fla. Stat. § 376.313(3). So, "to state a plausible claim under [§] 376.313(3), a plaintiff must allege: (1) a prohibited discharge or other pollutive condition occurred; and (2) damages." *Irizarry v. Orlando Utilities Comm'n*, 393 F. Supp. 3d 1110, 1116 (M.D. Fla. 2019).

ACS argues that Maxner cannot meet the first element—that a prohibited discharge or other condition of pollution occurred. The complaint labels EtO as an entirely airborne particle. And according to ACS, that type of

pollutant does not meet the statutory definition to trigger liability. The Court agrees.

The statute defines "discharge" as "include[ing], but not limited to, any spilling, leaking, seeping, pouring, misapplying, emitting, emptying, releasing, or dumping of any pollutant or hazardous substance which occurs and *which affects lands and the surface and ground waters of the state not regulated by ss. 376.011-376.21*." Fla. Stat. § 376.301(13) (emphasis added). "Pollution," in turn, is defined as "*the presence on the land or in the waters of the state* of pollutants in quantities which are or may be potentially harmful or injurious to human health or welfare, animal or plant life, or property or which may unreasonably interfere with the enjoyment of life or property, including outdoor recreation." Fla. Stat. § 376.301(37) (emphasis added). Pulling all this together, a "discharge or other condition of pollution" must be present on or affect lands or waters of the state.

As ACS points out, none of the acts or omissions alleged in the complaint involve land or water. (Doc. 48 at 4.) So there is no covered pollutant or discharge here.

Maxner, nevertheless, claims that Florida courts have interpreted § 376.313(3) to cover airborne or gaseous substances. (Doc. 49 at 3.) While that is accurate, the cases he references all involved emissions that also affected land or water. *See Cunningham v. Anchor Hocking Corp.*, 558 So. 2d 93 (Fla.

4

Dist. Ct. App. 1990) (allowing § 376.313 claim where the pollutant leaked directly onto the land where the plaintiffs were working and formed airborne hydrochloric acid); *Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1312 (S.D. Fla. 2020) (holding a claim was sufficiently pled under § 376.313 where the plaintiffs alleged that the airborne pollutants rained down as "black snow" and deposited onto the plaintiffs' property); *see also Irizarry*, 393 F. Supp. 3d at 1116-17.

But that is not what Maxner claims to have happened here. Nowhere in the complaint does he allege that EtO emitted into the air found its way into neighboring land or water. And while "the WQAA comes with a statutory directive that section 376.313(3) should be liberally construed," there is no interpretation that allows the Court to depart from the language it used to define discharge and pollution as occurring, affecting, or being present on "the land or in the waters of the state." *Irizarry*, 393 F. Supp. 3d at 1116. These are not merely "defendant's preferred words," as Maxwell claims; they are the statutory requirement. (Doc. 49 at 2.)

While EtO is undeniably a hazardous substance, the statute only imposes liability for a "discharge" or a "condition of pollution" involving that substance. As defined by the legislature, both terms fundamentally require the substance to affect or be present on the "lands and the surface and ground waters of the state." The mere emission of a hazardous substance into the air,

without any allegation that it subsequently affected land or water, is simply insufficient to trigger strict liability under these definitions. Without facts suggesting that the EtO emitted here had some impact on Florida's land and water, a claim for strict liability under Fla. Stat. § 376.313(3) necessarily fails.

## IV. Conclusion

For the reasons above, ACS's Motion to Dismiss (Doc. 48) is **GRANTED**. Maxner's response brief does not ask for leave to amend, nor has he filed a separate motion seeking such relief. Accordingly, Count III is **DISMISSED** "on the merits and with prejudice." *A&A Wealth Mgmt., LLC v. Sec'y of Hous. & Urb. Dev.*, No. 24-61033-CIV, 2025 WL 947638, at *5 (S.D. Fla. Mar. 28, 2025); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("[A] trial court is not required sua sponte to grant leave to amend prior to making its decision.").

**ORDERED** in Fort Myers, Florida on March 5, 2026.

Kyle C. Dudek
United States District Judge

6